## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ZAHIR RIVERA MENDEZ, EMMANUEL LOPEZ GONZALEZ, ON THEIR OWN AND ON BEHALF OF THEIR CONYUGAL PARTNERSHIP AND ON BEHALF OF THEIR MINOR SON JLR<br><br>**PLAINTIFFS**<br><br>V.<br><br>HOSPITAL COMUNITARIO BUEN SAMARITANO, INC. D/B/A BUEN SAMARITANO, DR. MABEL BONILLA RODRIGUEZ, HER HUSBAND JOHN DOE AND THEIR CONYUGAL PARTNERSHIP, GRUPO OBSTETRICO-GINECOLOGICO BB, ABC INSURANCE COMPANY AS INSURANCE COMPANY FOR HOSPITAL COMUNITARIO BUEN SAMARITANO D/B/A BUEN SAMARITANO, DEF INSURANCE COMPANY AS INSURER FOR DR. MABEL BONILLA, GHI INSURANCE COMPANY AS INSURER FOR GRUPO OBSTETRICO-GINECOLOGICO BB, RICHARD DOE, JANET DOE, MNO INC. AND PQR INC.<br><br>**DEFENDANTS** | CIVIL NO.<br><br><br><br><br><br><br><br>TORTS<br>MEDICAL MALPRACTICE<br><br>PLAINTIFFS DEMAND JURY TRIAL |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** plaintiffs represented by the undersigned counsel and respectfully before this Honorable Court allege, stay and pray:

## JURISDICTION

1.     The jurisdiction of this Honorable Court is invoked under 28 U. S. C. A. section 1332 as plaintiffs are residents of the State of Colorado in the United States of America and

defendants are residents of Puerto Rico, thus there is diversity of citizenship between the parties, and the amount in controversy exceeds the jurisdictional threshold of $75,000 exclusive of interest and costs.  The facts set forth in this complaint are also actionable under Articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. section 3141 et seq.

2. The plaintiffs demand trial by jury.

## THE PARTIES

3. Co-plaintiff Zahir Rivera Méndez (Zahir) is of legal age, married to co-plaintiff Emmanuel López González (Emmanuel), under a Conjugal Partnership Regime. Both parents are the parents of the minor Justin López Rivera and reside in 4296 Prestige Point, Colorado Springs, Colorado 80906.

4. Co-defendant, Dr. Mabel Bonilla Rodríguez, is a physician authorized to practice in the Commonwealth of Puerto Rico specialized in obstetrics and gynecology. Dr. Bonilla treated Zahir during her pregnancy and at all relevant instances pertaining the events prompting this complaint. Dr. Bonilla is married to John Doe herein denominated as such once his true name is currently unknown and which whom she forms a conjugal partnership. Dr. Bonilla, her husband John Doe and their conjugal partnership receive the financial benefits derived from the medical practice and professional services provided to plaintiff and are therefore jointly and severally liable to plaintiffs.

5.  At the time of the incident, for which plaintiff herein claim, Dr. Bonilla provided medical services to plaintiffs under the auspices and/or on behalf of Grupo Obstetrico-Ginecologico BB, (from now on, "the Group"). The Group is a legal entity

with capacity to sue, to be sued, and who can be responsible for plaintiffs in this case. The Group yielded an economic benefit due to the medical treatment rendered to plaintiffs on its behalf thru Dr. Bonilla and is therefore jointly and severally liable to plaintiffs. The Group is responsible to plaintiffs for the negligent acts and omissions amounting to medical malpractice committed on behalf of the Group, their medical personnel, technicians and nursing personnel while providing medical services and medical care to plaintiff in this case. The Group is responsible towards plaintiffs per Article 1802, vicariously liable per Article 1803 of the Puerto Rico Civil Code and per *stare decisis*.

6. Co-defendant, Hospital Comunitario Buen Samaritano, Inc. D/B/A Buen Samaritano, (from now on the "Hospital") and is an entity with legal personality who operates and/or administer the Hospital and/or the dependencies whereat Zahir requested medical assistance and treatment, and thereat plaintiff was cared and treated by Dr. Bonilla, and by other medical and nursing personnel as narrated further on. The Hospital also yielded an economic benefit and gain from the medical services offered to plaintiffs. The Hospital is also responsible for the negligent acts and/or omissions amounting to professional medical and hospital malpractice incurred at the Hospital, by their medical personnel, technicians, nursing personnel, and/or for the medical services provided to plaintiffs while at the emergency room, NICU and/or other dependencies. The Hospital is therefore responsible towards plaintiff –directly- per Article 1802 -and vicariously- per Article 1803 of the Puerto Rico's Civil Code and *stare decisis*.

7.     Defendant ABC Insurance Company is an insurance company operating in Puerto Rico according to the laws of the Commonwealth of Puerto Rico and authorized to issue insurance policies. ABC Insurance Company have in effect a insurance policy in favor of the Hospital and which cover the Hospital in cases of medical mal practice such as the case prompting this complaint. By virtue of the terms and conditions of said insurance policy defendant ABC Insurance Company is legally bound towards plaintiffs for the negligent acts and omissions amounting to mal practice incurred by their personnel, technicians, and nursing personnel and for the services provided to plaintiff at the emergency room, NICU or other medical dependencies at the Hospital.

8.     Defendant DEF Insurance Company is an insurance company operating according to the laws of the Commonwealth of Puerto Rico authorized to issue insurance policies to cover occurrences such as the one prompting this complaint, which have in effect an insurance policy to cover Dr. Bonilla, and/or her husband John Doe, and/or their conjugal partnership for professional medical mal practice in cases such as this case. By virtue of the terms and conditions of said insurance policy defendant DEF Insurance Company is legally bound towards plaintiffs for those negligent acts and omissions amounting to professional medical mal practice attributed to Dr. Bonilla.

9.     Defendant GHI Insurance Company is an insurance company operating as such according to the laws of the Commonwealth of Puerto Rico and authorized to provide insurance policies. GHI Insurance Company have in effect a policy in favor of the Group to cover professional medical mal practice in cases such as this case and by virtue of the terms and conditions of said insurance policy is legally bound towards

plaintiffs for the negligent acts and omissions amounting to professional medical and hospital mal practice attributed to the "Group", its medical personnel, technicians and nursing personnel while they medically treated plaintiff. The Group is directly responsible towards plaintiff per Article 1802 and vicariously per Article 1803 of the Puerto Rico Civil Code and according to stare decisis. At the time of this occurrence Dr. Bonilla was performing her medical duties for her financial benefit and that of the Group.

10. Defendants Richard Doe, Janet Doe, MNO Inc. and PQR Inc. are natural or legal persons who have the capacity to sue and to be sued, and who can be responsible towards plaintiffs for the medical malpractice incurred in this case and/or their insurance companies. Defendants described in this paragraph are responsible towards plaintiffs directly under Article 1802 and vicariously under Article 1803 of the Puerto Rico Civil Code and per *stare decisis*. This party does not waive however, its right to claim for any other medical negligence that may surface from the examination of plaintiff's medical records or during discovery.

11. Defendants mentioned in paragraphs 4 thru 10 are jointly and severally liable to plaintiffs.

**THE FACTS**

12. On December 1, 2012 Zahir, then 36 weeks pregnant, visited the Hospital suffering from an abdominal pain. Thereat Dr. Mejías evaluated her; she had irregular contractions every 5 minutes. After determining that the patient had bacteria in her urine, and hemoglobin of 12.5. Zahir was then discharged.

13. On December 15, 2012 Zahir, then 38 5/7 weeks pregnant, went to the emergency room since she could not feel her baby. At the Hospital an obstetric sonogram (which wasn't notified to the physician) was performed and a NST describing a heartbeat of 123-126 moderate variability. Zahir had contractions every 6 to 7 minutes and Dr. Mejías to Dr. Ricardo de Jesús consulted the case. The patient was then discharged.

14. On December 17, 2012 Zahir arrived at the Hospital according to preadmission orders given to her by Dr. Bonilla. A nurse at the Hospital then administered Cytotec and ampicillin.

15. A fetal monitor was placed on the patient, and afterwards Dr. Bonilla evaluated the patient and broke her membranes. The amniotic liquid was clear.

16. Per the fetal monitor tracing, initially during labor the baby was in a satisfactory cardiorespiratory condition however, the baby subsequently presented problems evidencing he was suffering a cardiorespiratory crisis and prenatal asphyxia.

17. On or around 3:45 p.m. Zahir was moved to the labor room. Zahir was pushing for approximately 60 minutes, but her baby would not come out. A physician was called and a VAC was applied. The record reveals that the VAC came loose and that the procedure was repeated until pulling the baby's head to the perineum. Backwards pressure was applied and the baby's head came out with the umbilical cord rapt twice around him. Dystocia was identified and suprapubic pressure was applied. Cord gases were obtained approximately 22 minutes after birth.

18. Around 5:30 p.m. the baby was received at the maternity ward in a state of severe hyperactivity with no respiratory efforts and without peripheral pulse. The baby's APGAR at 1 minute -4:47 p.m.- was of 1, ambu and oxygen were utilized and a code green was called, the baby was intubated endotracheal and CPR commenced, epinephrine was administered in two occasions. After noticing pulse and a weak respiratory effort the baby was transferred to NICU. The baby was exhibiting involuntary movements. The baby was then transferred to La Concepción Hospital in San German.

19. During labor Justin suffered a severe cardiorespiratory depression and severe prenatal hypoxia which was unattended or timely treated which caused the severe injuries herein claimed. The medical care and monitoring of the baby's condition during labor was negligent and departed from the accepted and recognized standards of care in medical practice.

20. Due to the negligent actions and/or omissions of Dr. Bonilla, the medical and nursing personnel at the hospital, the Group and the remaining codefendants baby López Rivera suffered an intracranial germinal hemorrhage and bilateral changes of cystic encephalomalacia. Baby López Rivera is in a vegetable state and will remain in that state for the rest of his life.

**CAUSES OF ACTION**

21.     We present this complaint according to Articles 1802 and 1803 of Puerto Rico's Civil Code and according to *stare decisis*.

**NEGLIGENCE**

22.     Dr. Bonilla, the Hospital, and the Group and the remaining co-defendants were negligent in the medical care and treatment provided to their patient during labor.

23.     Dr. Bonilla, the Hospital, the Group and the remaining co-defendants were negligent particularly in the fetal monitoring of baby López Rivera that reveal evident cardiorespiratory problems and lack of oxygenation. Dr. Bonilla, the Hospital, the Group and the remaining co-defendants albeit counting with sufficient signs and enough time to remedy the risks in which Zahir and her baby were in, failed to take necessary emergency action of performing an emergency C-section, and failed to prevent and resolve the hypoxic insult suffered by baby López Rivera and its tragic aftermath. Through their actions and/or omissions co-defendants deviated from the standards of care expected in the best practice of medicine and their conduct proximately caused the injuries for which plaintiffs herein claim. Dr. Bonilla, the Hospital, the Group and the remaining co-defendants are all jointly and severally liable towards plaintiffs.

24.     The physicians and nursing personnel, who with Dr. Bonilla managed Zahir's labor and implemented the code green, were negligent and their actions and omissions also results and/or contributed to the injuries suffered by plaintiff and are jointly and severally liable towards plaintiffs. Among other things, the nursing personnel failed to monitor the progress of Zahir's labor, the variances of the fetal monitoring, and

fail to alert Dr. Bonilla when she was not near the patient, or any other physician at the Hospital, of the changes in the fetal tracing evidencing the medical crisis baby López Rivera was going through, thus denying the emergency medical assistance necessary to Zahir and to her baby to prevent and resolve the medical crisis resulting in baby López Rivera's catastrophic injuries.

25. The Hospital also failed in monitoring the medical and nursing medical care provided to the patient, and to ensure their compliance with the norms, directives and protocols issued by the Hospital. The Hospital is thus responsible for the negligent actions and/or omissions incurred by their technical, auxiliary and nursing personnel while treating Zahir and her baby.

26. The nursing personnel of the Hospital failed in managing and executing the medical orders and in adequately assisting the patient -as was their duty- while receiving treatment in the Hospital. The actions and omissions of the medical and nursing personnel provided to the patient and to her baby by the Hospital, departed from the best practice of medicine and proximately caused and/or contributed to the injuries suffered by plaintiffs, and are therefore jointly and severally liable to plaintiff with the remaining codefendants.

27. Dr. Bonilla was directly responsible for giving Zahir and her baby the intra partum care that they required. However, although the fetal heart rate demonstrated tracings category II and III for a period of approximately two (2) hours, Dr. Bonilla did not intervene to fix the situation, to improve the intrauterine environment or to complete delivery to avoid hypoxemia, the acidemia and the irreversible neurological

damage suffered by the baby as a result. Even more, Dr. Bonilla together with the nursing, technical and auxiliary personnel of the hospital are responsible for having maintained Zahir pushing for around an hour without evaluating every 5 minutes the fetal heart rate as established by the American College of Obstetrics and Gynecology, equally contributing to the lack of prevention of the injuries suffered by Baby López Rivera. Baby López Rivera's neurological damage is therefore the result of these defendants deviations from the best practice of medicine and hospital care in this case.

28. Plaintiff is not waiving its right to claim for any other negligent medical deviation incurred by the defendants or that may be attributable to those mentioned before that may surface in this case from pending discovery.

## DAMAGES

29. Due to the negligent acts and omissions of defendant Zahir suffered great physical pain, mental anguish and moral damages. Zahir has suffered, is suffering and will suffer for the rest of her days to see her first child in a vegetative state, disabled and helpless, and cognizant of the fact that her son will remain in that state for the rest of his life. Zahir will have to care, feed and ensure her son physical well being during the rest of his life. Nor can Zahir see her first child develop as the normal child she longed for, nor can she be provided with his personal and economic assistance or with his company in her golden years. This entire ordeal has disrupted Zahir's life and her capacity for enjoyment and joy in life. The damages caused to Zahir are estimated no less than $1,000,000 (one million dollars), which is claimed to defendants.

30. As a result of Justin's care, in which Zahir will have to dedicate the rest of her life, she will be limited in her opportunities to study and/or work; these limitations represent impairment in her capacity to produce an economic income. Zahir claims on her behalf and that of her conjugal partnership the impairment to gain income and a lost profit that this situation has created and will create. To this date said damages are estimated in no less than $500.000 (five hundred thousand dollars). Zahir also claims on her behalf and her conjugal partnership the future cost of care that Justin will need while she finds herself working and/or studying. This amount is estimated to be no less than $500,000 (five hundred thousand dollars).

31. By reason of the acts and omissions of defendant Emmanuel has suffered, is suffering and will suffer for the rest of her days great anguish, physical and moral suffering to see his first child in a vegetative state, disabled and helpless, and cognizant of the state in which his beloved son will remain for the rest of his life. Emmanuel will have to care, feed and ensure for his son physical well being during the rest of his life. Nor can he see his first child develop as the normal child he longed for, nor can his son provide Emmanuel with his personal and economic assistance, or company in his golden years. Everything that happened has disrupted Emmanuel's life and capacity for enjoyment and joy. Damages caused to Emmanuel are estimated no less than $1,000,000 (one million dollars) which are claimed to defendants.

32. Zahir and Emmanuel and their conjugal partnership additionally claim Justin's organic, physical, mental and disabling damages caused by defendants

negligent actions and omissions, damages with which their son will have to live with the rest of his life. This is estimated to be no less than $2,000,000 (two million dollars).

33. Zahir, Emmanuel and their conjugal partnership in addition claim to defendants all costs that can carry Justin's medical treatment, including but not limited to physical therapies, medication, medical equipment and instruments that will be necessary to maintain his quality of life. This is estimated at this date in no less than $1,000,000 (one million dollars), a continuous damage, amount that should be subsequently adjusted -on or before judgment- according to Justin's condition and prognosis at that time and per expert evidence.

34. Zahir, Emmanuel and their conjugal partnership in addition claim on behalf of their son his impairment for the potential to generate future income during his lifetime, an amount that is estimated to be no less than $500,000 (five hundred thousand dollars) amount that should be subsequently adjusted on or before judgement date according to expert evidence financial and/ or actuarial that supports it.

35. Zahir, Emmanuel and their conjugal partnership additionally claim the loss of economic support and care that their son could have given them in their life and during their elderly years being estimated to be no less than $500,000 (five hundred thousand dollars).

36. Zahir, Emmanuel and their conjugal partnership as representatives of Justin also claim the loss of joy and enjoyment of his life, damages that are estimated to be no less than $500,000 (five hundred thousand dollars).

37. All damages claimed in this complaint increase as time elapses.

38.     Defendants are jointly and severally responsible for damages herein claimed and should be compensated by them.

39.     Plaintiffs judicially interrupted any prescriptive term in this case last 31 March 2014 by the filing of a complaint before the Aguadilla Superior Court since the medical records were not given to plaintiffs until December 6, 2013. Voluntary dismissal of said complaint follows on May 8, 2014.

**WHEREFORE** it is respectfully requested from this Honorable Court to grant a judgment against co-defendants in no less than the amounts herein requested as well as pre-judgment interest, costs and reasonable attorneys' fees and such other relief as this Honorable Court may deem necessary and appropriate.

**I HEREBY CERTIFY** that on this 24 day of April 2015, I electronically filed the foregoing certificate of service with the Clerk of the Court using the CM/ECF system.

In Ponce, Puerto Rico this 24 day of April 2015.


By:     S/DENNIS J. CRUZ PEREZ

**DENNIS J. CRUZ PEREZ**
**USDC-PR NO. 205505**
PO Box 10720
Ponce, Puerto Rico 00732
Tel. (787) 812-5600
Fax: (787) 843-5053
E-mail: crawlawdjcp@gmail.com
        lcdocruzperez@gmail.com